IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLAUDIA KENNEDY,

      Plaintiff,

    v.

BANK OF AMERICA, NATIONAL
ASSOCIATION; BANK OF AMERICA
CORPORATION; STEVE OWEN, and
DOES through 25,

      Defendants.

_____/

No. C 10-0868 CW

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Defendants Bank of America, National Association[1] (Bank of
America) and Steve Owen move for summary judgment on all claims in
Plaintiff Claudia Kennedy's First Amended Complaint (1AC): for
interference with and retaliation for an exercise of rights under
the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq.,
and for wrongful discharge.  Plaintiff opposes the motion.  The
matter was heard on March 31, 2011.  Having considered oral
argument on the motion and all the papers filed by the parties, the
Court grants Defendants' motion for summary judgment on all claims.

_____

     [1]Defendants indicate that Plaintiff erroneously names Bank of
America Corporation.

United States District Court
For the Northern District of California

FACTUAL BACKGROUND

On September 28, 1971, Plaintiff began employment with Bank of America as a teller in the Newark, California banking center. Plaintiff was promoted to various positions within Bank of America and, in 2004, she became the banking center manager at the Union City branch.  As the banking center manager, Plaintiff acted as its chief executive officer.  Pl. Dep., 79-80.  Although Plaintiff did not directly supervise each employee at the banking center, ultimately all employees who worked there reported to her, including the Teller Operations Specialist (TOS), Assistant Manager, senior tellers, tellers, senior personal bankers, personal bankers and small business specialists.  Pl. Dep., 76-80. Plaintiff's duties included coaching and developing her associates, trying to attain the branch goals, keeping an open line of communication with her associates, and managing the banking center always to do better.  Pl. Dep., 48-50.  Plaintiff was also responsible for being familiar with, and ensuring that her associates complied with, Bank of America's policies and procedures.  Pl. Dep., 50-53.

Plaintiff reported to the Consumer Market Executive (CME) for the region.  In December, 2006, Defendant Steve Owen became CME for the region and Plaintiff began reporting to him.  Pl. Dep., 94-95. Frances Crump and Roselle Lau were Consumer Marketing Managers (CMM) who reported to Owen and helped manage the region.  Pl. Dep., 108-09; 276-77; Crump Dec., ¶ 2.

In November, 2007, Plaintiff developed a serious medical condition: an abscess on the roof of her mouth.  On November 29 and 30, 2007, Plaintiff went to her dentist, Dr. Gerald Au, for

United States District Court
For the Northern District of California

treatment.  Pl. Dep., 240.  The abscess caused Plaintiff a great
deal of pain and affected her ability to eat, speak and present
well to the public.  Pl. Dec. at 2.  Because of the abscess,
Plaintiff did not work from November 29 to December 10, 2007.  Pl.
Dep., 113-114; 110-112.[2]  Plaintiff was paid for the time she did
not work.  Crump Dec., ¶ 8, Ex. 4.  The treatment for Plaintiff's
abscess lasted through September, 2008.  Pl. Dec. at 2.

To receive leave under the FMLA, the Bank of America associate
handbook requires an employee to: (1) provide as much notice as
possible for the leave, even if unforeseeable; (2) provide the
reason for the leave to the employee's manager, so the manager can
determine if the leave qualifies for job protection; (3) confirm
the leave plans with the employee's manager, including the length
of the leave; (4) initiate the leave by calling the personnel
center; and (5) provide medical certification, indicating that a
serious health condition exists, on the form provided by the
employee's manager.  Crump Dec., Exs. 1 (1996 Bank of America
Associate Handbook) and 2 (2005 Bank of America Associate
Handbook).  Plaintiff received copies of the associate handbook.
Pl. Dep., 132.

On November 29, 2007, Plaintiff called one of her subordinates
at her banking center, the teller supervisor, to inform her that
Plaintiff had a serious abscess in her mouth and would probably be
out of work for about a week.  Pl. Dep., 114-16.  Plaintiff did not
call Owen nor did she ask anyone to call him to tell him that she

---

[2]In her declaration, Plaintiff states that she did not work
pursuant to her doctor's order.  Pl.'s Dec., 2.  However, in his
deposition, Dr. Au did not state that he told Plaintiff to take
time off work.

would not be at work for a week.  Pl. Dep., 116-17.  During the time she was out, Plaintiff called the banking center every day. Pl. Dep., 115-16.

On December 6, 2007, Owen was informed by Plaintiff's banking center that Plaintiff had been absent from work all week because she was sick.  As noted above, she had not called Owen to tell him she would be absent.  Owen Dec., ¶ 5.  That same day, Owen called Plaintiff at her home to determine the reasons for her absence from work.  Pl. Dep., 117-18; Owen Dec. ¶ 5.  According to Plaintiff, during this call Owen was angry at her and wanted to know what her medical problem was and how long she would be away from work.  Pl. Dep., 118.  When Plaintiff replied that she did not know how long she would be out sick, Owen stated, "You need to get leadership into that banking center.  You need to call other banking centers right now, and you need to get help at your banking center."  Pl. Dep., 119.  Owen also told Plaintiff he wanted to see a doctor's note and he wanted her to get back to work as soon as possible. Pl. Dep., 126.

After the call from Owen, Plaintiff called another banking center to send help over to the Union City banking center while she was absent from work.  Someone was sent to cover for her.  Pl. Dep., 124.  Plaintiff was upset after Owen's call because she felt he had raised his voice and screamed at her.  Pl. Dep., 125. Plaintiff called Sylvia Jesuit, another banking center manager, to tell her about Owen's call.  Pl. Dep., at 127.  Jesuit said she would call Owen and ask him to apologize to Plaintiff.  Pl. Dep., 127-28.  Within ten minutes, Owen called back, apologized for not having treated the situation correctly and stated that he should

4

United States District Court
For the Northern District of California

have shown more compassion.  Pl. Dep., 128.  Plaintiff also called
Bank of America's Human Resources hotline, referred to as Advice
and Counsel, and told the representative that Owen had been abusive
and rude and that she did not like the tone of his voice.  Pl.
Dep., 132-35.  The representative apologized for Owen's behavior,
but stated that he had a right to ask for a doctor's note.  Pl.
Dep., 133-34.  Owen never again asked Plaintiff about her health or
medical condition.  Pl. Dep., 252.  Plaintiff never called Advice
and Counsel again to complain about Owen or any other person at
Bank of America treating her unfairly or rudely.  Pl. Dep., 137-38;
426-27.  Plaintiff states that, from the time she complained about
Owen to Advice and Counsel, he treated everything she did as wrong
and subjected her to unfair criticism, and that she was eventually
fired for things she did not do.  Pl. Dec., 8.

Plaintiff obtained a doctor's note at Owen's request, but she
never gave the note to Owen or to anyone else at Bank of America.
Pl. Dep., 129-30.

In August, 2008, approximately nine months after Plaintiff was
absent from work because of the abscess, her banking center
suffered a $67,500 loss due to traveler's checks that were
improperly sold to a customer.  Pl. Dep., 179; 183-84; 203-08; 211-
12; Holland Dec. ¶ 6; Owen Dec., ¶¶ 6-8.  Bank of America's policy
and practice of selling traveler's checks required the employee
responsible for the transaction to verify that the customer had
sufficient funds to cover the cost of the traveler's checks.  Pl.
Dep. 154; Owen Dec. ¶ 6.  Checks from other banks were not
acceptable for the purchase of traveler's checks.  Pl. Dep., 170-
71; Owen Dec., ¶ 6.

On August 29, 2008, a customer presented two Citibank checks to the TOS at Plaintiff's banking center to purchase traveler's checks in the amount of $67,500. Pl. Dep., 161-62; 168-71. The TOS sold the traveler's checks to the customer and the customer's Citibank account had insufficient funds to cover their cost. Pl. Dep., 178-80; 182-84; 203-208. Plaintiff states that she was out of the banking center when the traveler's checks were sold. Pl. Dep., 161. Later, the TOS brought the Citibank checks to Plaintiff for her approval, and she initialed them. Pl. Dep., 171-72. When she initialed the checks, Plaintiff did not know they were for the purchase of traveler's checks; she thought they were for deposit. Pl. Dep., 171-72. The TOS did not tell Plaintiff why he wanted her to initial the checks, and she never asked him. Pl. Dep., 174-76; 203-08; 211-12. Plaintiff later learned that the customer had left the country. Pl. Dep., 182-83.

Other managers had been terminated for incurring losses as low as $3,000. Crump Dec., ¶ 4. Owen decided not to terminate Plaintiff's employment for the $67,500 loss because of her long tenure with Bank of America and her connections to the employees, clients and community. Owen Dec., ¶ 8. Instead, Owen issued Plaintiff a final written warning which indicated that: (1) Plaintiff had failed to meet performance expectations by approving a large transaction that resulted in a "returned item;" (2) Plaintiff was expected to meet all of the requirements for the manager position she held including using sound judgment and protecting the bank from losses; (3) Plaintiff was expected to comply with all Bank of America policies, procedures, guidelines and conditions of employment, including but not limited to those

set forth in the Associate Handbook and Bank of America Code of Ethics; and (4) Plaintiff was expected to demonstrate immediate and sustained improvement in the areas set forth above.  Defs.' Ex. D.  The warning also indicated that if Plaintiff failed to meet these expectations, she would be subject to disciplinary action, up to and including termination.  Id.

At the end of 2008, Owen and his assistants, Crump and Lau, were concerned that full-time banking center employees were not working a full shift on Saturdays, and expressed this concern to the banking center managers.  Pl. Dep., 275-78; Owen Dec., ¶ 9; Crump Dec., ¶ 10.  Owen, Crump and Lau requested that all banking center managers ensure that their full-time employees worked a full eight hours.  Pl. Dep., 265-68; 275-78; 281-86.  To ensure compliance, Owen, Crump and Lau initiated an investigation of all banking centers in the region.  Pl. Dep., 281-83;310-13; Owen Dec., ¶ 10; Crump Dec., ¶ 11.  As part of the investigation, members of Owen's team went unannounced to various banking centers on random Saturdays to determine if employees were working their designated shifts.  Pl. Dep., 281-83; Owen Dec., ¶ 10, Crump Dec., ¶ 11.  Lau visited Plaintiff's Union City banking center and found that no employees were present.  Pl. Dep., 281-86; Owen Dec., ¶ 10; Crump Dec., ¶ 11.  The next month, the marketing team asked some of the banking centers, including Plaintiff's, for copies of employees' weekly time sheets that included the day of the random Saturday visit.  Pl. Dep., 288-92; 299; 210-13; Owen Dec., ¶ 10; Crump Dec., ¶ 11.  After reviewing the time sheets, Crump discovered that some employees at Plaintiff's banking center had been paid for the entire day of the random Saturday visit, even though the team

**United States District Court**
For the Northern District of California

believed that no employees had worked a full shift that day.  Owen
Dec., ¶ 11; Crump Dec., ¶ 12-14.  Plaintiff testified that her
assistant manager was at the branch on the Saturday that Lau made
her visit, but did not answer the door because she was in the
banking center by herself.  Pl. Dep., 282.

Crump was also suspicious of the time sheets of two personal
bankers at Plaintiff's banking center because they reflected that
the employees repeatedly signed out at the same time each day, as
opposed to more random times.  Crump Dec., ¶ 12-14.  Owen's team
began interviewing employees at Plaintiff's banking center and were
informed that two personal bankers were submitting false time
sheets, with the approval of Plaintiff, by missing full lunch
periods in exchange for leaving work early in violation of Bank of
America policy and California labor law.  Owen Dec., ¶ 12-20; Crump
Dec., ¶ 15-22.  Plaintiff testified that she did not give such
approval.  Pl. Dep., 319.  Plaintiff declares that, when she was
interviewed by Owen, Crump and Lau about the "falsified" time
sheets, she told them that approval of the time sheets was the
responsibility of the TOS and the operations manager and that she
had nothing to do with them.  Pl. Dec., 7.

Owen, Crump and Lau believed that employees at Plaintiff's
banking center were not following Bank of America's wage and hour
policy.  Owen Dec., ¶¶ 19-23; Crump Dec., ¶¶ 22-25.  Owen lost
trust and confidence in Plaintiff's ability to manage her branch
effectively.  Owen Dec., ¶¶ 19-23.  On March 6, 2009, Owen
terminated Plaintiff's employment.  Defs.' Ex. F.

In her 1AC, Plaintiff asserts three claims under the FMLA and

a state law claim for wrongful discharge.[3]

PROCEDURAL BACKGROUND

On July 22, 2009, Plaintiff filed a complaint against Bank of America and Owen in state court alleging age discrimination, retaliation, harassment and failure to prevent retaliation and harassment in violation of California's Fair Employment and Housing Act, and common law claims for retaliatory wrongful discharge and breach of the implied covenant of good faith and fair dealing. Plaintiff voluntarily dismissed that action because the state discrimination claims were barred by the National Bank Act.  On March 1, 2010, Plaintiff filed her complaint in this action, asserting a claim for discrimination under 42 U.S.C. § 1981.  In her opposition to Defendants' motion to dismiss, Plaintiff acknowledged that her claim was not cognizable because she is not a member of a racial minority group.  Id.  She requested leave to amend to assert a claim based upon a violation of the FMLA.  Id. at 4.  The Court granted Defendants' motion to dismiss and granted Plaintiff leave to amend to allege a cognizable cause of action on some basis other than § 1981.  Plaintiff filed this 1AC.

LEGAL STANDARD

I. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

---

[3]In her opposition, Plaintiff does not respond to Defendants' arguments for judgment on her wrongful discharge claim.  Therefore, she concedes this claim.  Summary judgment is granted to Defendants on this claim.

United States District Court
For the Northern District of California

56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

II. FMLA

The FMLA creates two employee rights: the right to use up to twelve weeks of unpaid leave per year for protected reasons, 29 U.S.C. § 2612(a)(1), and the right to return to the same job or an equivalent job after using protected leave, 29 U.S.C. § 2614(a). Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001).  Employees may state three types of claims under the FMLA: (1) under 29 U.S.C. § 2615(a)(1), interference claims asserting that an employer has denied, interfered with or restrained the exercise or the attempt to exercise any right protected by the Act; (2) under 29 U.S.C. § 2615(a)(2),

United States District Court

For the Northern District of California

discrimination claims asserting that an employer has considered the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary proceedings; and (3) under 29 U.S.C. § 2615(b), discrimination claims asserting that the employer has considered as a negative factor in employment decisions the employee's filing of a complaint against the employer's conduct unlawful under the FMLA.

Where the claim is that the employer took an adverse employment action as a result of the employee's use of FMLA leave or opposition to an unlawful act, it is not treated as one for retaliation or discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), but as a claim of interference with rights guaranteed by the Act. Bachelder, 259 F.3d at 1124; Lew v. Superior Court of California, 2008 WL 728895, *10 (N.D. Cal.). To survive summary judgment on such a claim, the plaintiff must demonstrate that there is a triable issue of material fact as to whether the plaintiff's FMLA leave or opposition to the employer's FMLA violation was impermissibly considered as a factor in the adverse employment action. Id.

EVIDENTIARY OBJECTIONS

Defendants object to certain evidence presented by Pl. The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence. The Court will not discuss each objection individually. To the extent that the Court has relied on evidence to which Defendants object, such evidence has been found admissible and the objections are overruled.

United States District Court
For the Northern District of California

DISCUSSION

Plaintiff alleges that, when Owen called her at home while she was sick, he interfered with her right to take FMLA leave.  She also claims that, when she returned to work, Owen's changed behavior toward her and his eventual termination of her employment constitute retaliation for taking FMLA leave and for opposing Defendants' illegal acts under the FMLA.  Defendants first argue that all of Plaintiff's FMLA claims fail because her conduct was not protected under the FMLA.  In the alternative, Defendants argue that Plaintiff's claims fail because she does not raise a dispute of material fact regarding interference or retaliation.

I. Acts Protected Under the FMLA

The FMLA is not implicated and does not protect employees against disciplinary actions based upon absences not taken for one of the reasons enumerated in the Act.  Bachelder, 259 F.3d at 1125; Marchisheck v. San Mateo County, 199 F.3d 1068, 1074 (9th Cir. 1999).  To trigger FMLA protection, the employee must have a serious health condition that makes the employee unable to perform the functions of his or her employment.  Id. at 1073; 29 C.F.R. §§ 825.113(a and b).[4]  A serious health condition is an illness, injury, impairment, or physical or mental condition that involves, among other things, continuing treatment by a health care provider.  Id. at 1074 (citing 29 U.S.C. § 2611(11)).  To establish continuing treatment by a health care provider, the employee must show a period of incapacity of at least three consecutive days and treatment two or more times by a health care provider.  29 C.F.R.

[4]The FMLA also applies in other circumstances which are not relevant to Plaintiff's claims.

12

United States District Court
For the Northern District of California

§ 825.115(a)(1).

The FMLA does not protect employees who fail to follow the statutory and regulatory requirements for providing notice and a certification from a health care provider of the medical condition necessitating the leave.  <u>Baily v. Southwest Gas Co.</u>, 275 F.3d 1181, 1185-86 (9th Cir. 2002).  Although employees must notify their employers in advance if they plan to take foreseeable leave under the Act, they need not expressly assert their FMLA rights or even mention the FMLA.  <u>Id.</u> at 1185 (citing <u>Bachelder</u>, 259 F.3d at 1130).  However, the employee must explain the reasons for the leave to allow the employer to determine whether the leave qualifies under the FMLA, and the employee must disclose the anticipated duration of the absence.  29 C.F.R. § 825.301(b) (employee responsibilities); 29 C.F.R. § 825.303(b) (content of notice).

If the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the circumstances of the particular case.  29 C.F.R. § 825.303(a).  An employee must comply with the employer's usual and customary notice requirements for requesting leave, absent unusual circumstances.  29 C.F.R. § 825.303(c).  Calling in sick without providing more information is not sufficient notice to trigger an employer's obligations under the Act.  29 C.F.R. § 825.303(b).

An employer may require that the employee obtain, in a timely manner, a written certification by a health care provider.  29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a).  To be sufficient, the certification must specify the medical necessity for the leave and the expected duration of the leave, and must include a statement

that the employee is unable to perform the essential functions of his or her job because of the medical condition.  29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(a).

An employee is protected from retaliation for opposing any practice which is unlawful under the FMLA or any practice which the employee reasonably believes is a violation of the FMLA.  28 C.F.R. § 825.303(e); Gruppo v. Fedex Freight Syst., Inc., 296 Fed. Appx. 660, 664 (10th Cir. 2008); Hoffman v. Professional Med Team, 270 F. Supp. 2d 954, 965 (W.D. Mich. 2003).  Thus, an employee may state a retaliation claim even if the employer did not willfully violate the FMLA.  Id.  The plaintiff must establish that he or she subjectively believed the employer's conduct violated the FMLA. Wood v. Handy & Harman Co., 2006 WL 3228710 (N.D. Okla.).

Defendants argue that, because Plaintiff never submitted a request for FMLA leave, she never intended to take such leave and, therefore, she cannot now invoke protection under the FMLA.  They also argue that, even if she intended to take FMLA leave, the fact that she failed to follow Bank of America's notice requirements for taking such leave is fatal to her claims.  Plaintiff does not respond to this argument.[5]

---

[5]Instead of citing evidence disputing Defendants' arguments in her opposition, Plaintiff submits a separate document entitled, "Plaintiff's Evidence in Opposition to Defendants' Motion," in which, on one side of the page, she lists Defendants' contentions, and, on the other side of the page, she attempts to list her factual responses.  However, instead of using pin cites, she cites many pages of deposition transcripts, making it difficult to find the testimony to which she refers.  Defendants object to the manner in which Plaintiff presents her evidence because it is not in compliance with Civil Local Rule 56-2(a), the standing order of this Court, and Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure.  Although Plaintiff's opposition is not in compliance
(continued...)

**United States District Court**
For the Northern District of California

At her deposition, in response to the question, "Did you submit some sort of request to go out on a medical leave to Bank of America?", Plaintiff responded, "It wasn't a leave.  I was absent." Pl. Dep., 110: 7-9.  Later, Plaintiff was asked, "Did you ever take any leave of absence from Bank of America, a medical leave of absence, when you submitted some sort of form to take some sort of leave?" and Plaintiff responded, "No, sir."  Pl. Dep., 112: 19-23. Plaintiff testified that she never informed Owen, her immediate supervisor, or Advice and Counsel in the Human Resources Department about her absence, nor did she direct anyone else to do so.  Pl. Dep., 116: 13-18.  Instead, Plaintiff followed the procedure for taking sick leave by calling her assistant at her banking center, giving notice that she was going to be absent for approximately one week because of the abscess.  Pl. Dep., 114: 10-25, 115: 1-25.

Plaintiff's testimony belies her claim that she intended to take a leave of absence under the FMLA.  She never provided notice to her manager, Bank of America's Human Resource Department or anyone in authority of her intention to take FMLA leave, nor did she provide sufficient information for them to determine if the FMLA covered the requested leave, as required by 29 C.F.R. §§ 825.303(a) and (b).  In Plaintiff's statement of disputed facts, she cites the deposition of her dentist, Dr. Au, to support her contention that the abscess caused her considerable pain and affected her ability to eat, speak, and present well and was potentially life threatening, if untreated.  However, Plaintiff

---

[5](...continued)
with these rules, in the interests of justice which favors ruling on the merits of a claim, the Court considers Plaintiff's opposition.

informed no one at Bank of America of these facts.

Furthermore, even if Plaintiff intended to take FMLA leave, she failed, as required by 29 C.F.R. § 825.303 (c), to follow procedures prescribed in the Bank of America employee handbook. She never gave Owen the doctor's note that he requested.[6]

Based on the foregoing, Plaintiff's absence from work from November 28 to December 10, 2007 was not covered under the FMLA. Thus, her claims--for interference with FMLA leave, retaliation for taking FMLA leave, and retaliation for complaining about interference with FMLA leave--fail.  However, in the interests of justice, the Court addresses all the claims on the merits.

II. Claim of Interference Based on Owen's Telephone Call

In her 1AC, Plaintiff alleges that Owen interfered with her rights under the FMLA when he called her at home while she was absent from work.  1AC, ¶ 10.  Defendants argue that this claim fails because Plaintiff took all the time off she said she needed and, thus, Owen did not interfere with her ability to take any requested time off.  Plaintiff does not respond to this argument, apparently conceding it.  She presents no evidence that she needed to be absent from work after December 11, 2007 or that she would have requested leave under the FMLA for additional time, but for Owen's phone call.  In any event, her claim that Owen's call interfered with her leave would fail.

---

[6]Plaintiff submits a doctor's note that she obtained but never gave to Owen or any other person at Bank of America.  Pl.'s Dec., Ex. A.  The note is insufficient to meet the requirements of 29 U.S.C. § 2613(b) and 29 C.F.R. § 825.306(a) because it merely states that Plaintiff had dental appointments on November 29, November 30, December 7 and December 10 and requests that Plaintiff's absence from November 30 to December 10, 2007 be excused.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    As mentioned above, to establish a prima facie case for FMLA

2    interference, a plaintiff must show that she gave notice of her

3    intention to take leave and that the employer denied her the

4    benefits to which she was entitled.  <u>Farrell v. Tri-County</u>

5    <u>Metropolitan Transp. Dist.</u>, 2005 WL 1307695, *6 (D. Or. 2005).

6    Notice requires the employee to explain the reasons for the needed

7    leave so as to allow the employer to determine whether the leave

8    qualifies under the FMLA.   <u>Id.</u>

9    Plaintiff did not notify Owen that she needed to be absent for

10   medical reasons.  Rather, Owen called Plaintiff on December 6,

11   2007, when he learned that she had not been at work for

12   approximately six days.  At her deposition, Plaintiff described in

13   detail what Owen said to her in his phone call: he asked how long

14   she would be absent from work and what her medical problem was; he

15   told her that she needed to get back to work as soon as possible;

16   he told her that, while she was absent, she needed to get coverage

17   for her banking center; and he told her that she needed to give him

18   a doctor's note.  Pl. Dep., 118-19, 126.

19   Owen's questions and instructions do not amount to

20   interference with Plaintiff's leave.  His request that she return

21   to work as soon as possible cannot be interpreted as denying or

22   threatening to deny Plaintiff leave under the FMLA.  When asked why

23   she thought Owen was being abusive to her in this call, Plaintiff

24   replied that it was his loud tone of voice and what he said.  That

25   Owen raised his voice when Plaintiff had been absent from work for

26   a week without informing him may have demonstrated discourtesy or

27   poor communication skills, but did not interfere with her leave.

28   In contrast, in her declaration, Plaintiff states that Owen

17

**United States District Court**
For the Northern District of California

told her "not to miss work because of [her medical] condition even though it impacted major life activities and [her] ability to interact with customers." Pl. Dec., 2. Plaintiff's statement in her declaration is inconsistent with her deposition testimony describing what Owen said. The Court finds that the declaration is a "sham," within the meaning of <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266-67 (9th Cir. 1991) (party cannot create an issue of fact contradicting prior deposition testimony).

Therefore, Plaintiff fails to establish a disputed issue of material fact that she intended to take leave under the FMLA or that Owen interfered with any requested leave. Defendants' motion for summary judgment on Plaintiff's interference claim is granted.[7]

III. Retaliation for Exercising Her Rights and For Opposing An Alleged Unlawful Practice

Defendants argue that Plaintiff cannot demonstrate a triable issue of material fact as to whether her taking leave--even if it had been FMLA leave--or complaining about Owen's phone call were negative factors in the decision to terminate her employment. Defendants point out that Plaintiff was terminated fifteen months after her absence from work and her complaint about Owen, and that there were two intervening events breaking any causal chain between her absence and complaint and her termination. Plaintiff responds that, after her absence and complaint about Owen, what had been a collegial business relationship between Owen and herself soured markedly. Moreover, she argues that the two reasons Defendants give for terminating her are pretextual because she was not at the

---

[7]Because summary judgment is granted to Defendants, the Court does not address Defendants' argument that the interference claim fails because Plaintiff does not submit evidence regarding damages.

banking center when the traveler's checks were sold and she was not responsible for the banking center employees' compliance with Bank of America's policy on time cards.

The fact that Plaintiff was terminated fifteen months after her absence from work and her complaint about Owen negates any inference that the termination was motivated by those events. See Clark County Schl. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (to provide an inference of causality between employer's knowledge of protected activity and adverse employment action, temporal proximity must be very close; a three month and four month period have been held to be insufficient); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (eighteen-month lapse between protected activity and adverse employment action is "simply too long, by itself, to give rise to an inference of causation"); Swan v. Bank of Am., 360 Fed. Appx. 903, 906 (9th Cir. 2009) (termination four months after employee's return from leave too remote in time to support causation based on temporal proximity).

Nor is there evidence that Defendants' asserted reasons for her termination were mere pretext. Plaintiff's self-serving statements that other employees were responsible for the $67,500 loss at her banking center and the time sheets of the employees she supervised does not negate the fact that these events took place and that she was the manager of the banking center where they occurred. Plaintiff argues that being the manager does not make her responsible because "Bank of America is not the United States Navy where a ship captain is responsible for everything that happens on the ship." However, at her deposition, Plaintiff admitted that, as the manager, ultimately everyone in the banking

United States District Court
For the Northern District of California

center reported to her and she was responsible for enforcing Bank of America's policies and procedures.  Pl. Dep., 51, 79.

Finally, even if Plaintiff had taken FMLA leave, and had believed that Owen had tried to interfere with her leave, this is not what she complained of to her employer.  Plaintiff's complaint about Owen to Advice and Counsel concerned his tone of voice.  At her deposition, she testified that she told the representative at Advice and Counsel that "I could not believe that he could talk to me like that.  No one had ever talked to me like that.  I didn't abuse my absenteeism.  I was always at work. . . . They apologized for the way that I was spoken to."  Pl.'s Dep., 133-34.  When asked again about her complaint, Plaintiff testified that she told the representative at Advice and Counsel that Owen "was abusive.  He was rude.  I said I was shocked by the tone of his voice."  Pl.'s Dep., 134.  Again, Plaintiff contradicts her deposition in her declaration, stating that she "reported Owen's violation of my work place Civil Rights to be off work on medical leave."  Again, the Court finds that this is a "sham" declaration and does not create a dispute of fact to survive summary judgment.  See Kennedy, 952 F.2d at 266-67.

Nor is there evidence that Owen understood that Plaintiff had complained that he had interfered with her right to take leave.  Accordingly, Owen couldn't have retaliated against her for complaining that he had interfered with her right to take leave.

For all these reasons, Plaintiff does not establish a triable issue of material fact that Defendants' termination of her employment implicated the FMLA, or that the reasons for her termination were pretextual.  Therefore, Defendants' motion for

20

1  summary judgment on these claims is granted.

2                          CONCLUSION

3       For the foregoing reasons, Defendants' motion for summary

4  judgment on all of Plaintiff's claims is granted.  The Clerk shall

5  enter judgment and close the file.  Defendants shall recover their

6  costs from Plaintiff.

7

8       IT IS SO ORDERED.

9

10 Dated: 4/21/2011

11                                        CLAUDIA WILKEN
                                          United States District Judge

**United States District Court**
For the Northern District of California

                                21